## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL MCCLANAHAN,                     Case No. 1:09-cv-746
    Plaintiff                           Barrett, J.
                                        Litkovitz, M.J.
    vs


COMMISSIONER OF                         **REPORT AND**
SOCIAL SECURITY,                        **RECOMMENDATION**
    Defendant


    Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in

opposition (Doc. 19), and plaintiff's reply memorandum. (Doc. 20).

### PROCEDURAL BACKGROUND

    Plaintiff was born in 1980 and was 25 years old at the time of the administrative law

judge's (ALJ) decision. He has a limited education and past relevant work as a cashier. Plaintiff

filed applications for DIB and SSI on June 12, 2006, alleging an onset date of disability of March

4, 2006, due to a "bad back, bad neck, irritable bowel syndrome, bad knees and dyslexia." (Tr.

154). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then

requested and was granted a de novo hearing before an ALJ. On June 30, 2008, plaintiff, who

was represented by counsel, appeared and testified at a hearing before ALJ Larry A. Temin. (Tr.

19-48).  A friend of plaintiff's, Christin Rogers, and vocational expert (VE), Janet E. Chapman, also appeared and testified at the hearing. (Hearing transcript pages 30-40).[1]

On August 15, 2008, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  The ALJ determined that plaintiff suffers from the following severe impairments: depression and borderline intellectual functioning.  The ALJ found that plaintiff's impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 15). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> He is able to perform only simple, routine, repetitive tasks and is able to understand, remember and carry out only short and simple instructions; he cannot interact with the general public more than occasionally and cannot interact with coworkers or supervisors more than occasionally.  He cannot work at a rapid production-rate pace and is able to make only simple work-related decisions; the job should not require more than ordinary and routine changes in work setting or duties and should not require more than simple reading, writing, or math.

(Tr. 15).  The ALJ determined that plaintiff's subjective allegations of disability are less than credible. (Tr. 15).  The ALJ next determined that plaintiff is unable to perform any past relevant work. (Tr. 16).  The ALJ further determined that plaintiff is capable of performing a significant number of jobs in the national economy including jobs as a cleaner, kitchen helper and machine tender. (Tr. 17).  Accordingly, the ALJ concluded that plaintiff is not disabled under the Act. (Tr. 18).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] A portion of the transcript was not bate stamped for court purposes including portions of the hearing transcript.  Therefore, where the transcript is cited, but not bate stamped, the Court will make the distinction between the hearing transcript (Hearing Tr. __) and court transcript (Tr. __).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial

3

gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and

background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

5

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## MEDICAL RECORD

Plaintiff presented to the emergency room ("ER") on August 10, 2005 with abdominal cramping and diarrhea. (Tr. 445-52). He was advised against smoking and drinking alcohol, and discharged with medication. (Tr. 448). Plaintiff was admitted to the hospital from August 14 to August 16, 2005, for abdominal pain. (Tr. 209-28). Plaintiff described the pain as cramp-like and intermittent with bright red blood in his stool. Examination revealed tenderness in the lower quadrants, mostly on the left side. A CAT scan was negative for diverticulitis, but a colonoscopy showed one or two small polyps, which were removed. (Tr. 209-10, 217, 227). After consultation with Dr. Bhaskar, a gastroenterologist, the final diagnosis was abdominal pain. Plaintiff was discharged with irritable bowel syndrome (IBS) medication.

Plaintiff presented to the ER seven more times in 2005 for chronic abdominal pain. (Tr. 252, 258, 265, 269, 279, 286, 445). Diagnostic testing was negative, and plaintiff was treated and discharged with medication and instructions to follow up with Dr. Bhaskar. (Tr. 269-70, 279-80).

7

In January 2006, plaintiff presented to the ER with left knee pain twice in the same week. (Tr. 240-43, 244-46). A knee x-ray was negative except for moderate joint effusion. (Tr. 241-42, 245, 247). He noted tingling into the toes of his left foot on exam. *Id.* Plaintiff was diagnosed with left knee arthralgia with chondromalacia. (Tr. 242).

Plaintiff went to the ER twice in March 2006, with low-back pain. (Tr. 234-36, 237-39). He reported that he lifted heavy weights all day long at work and only had occasional back pain. (Tr. 235). Examination of the lumbosacral spine revealed diffuse pain throughout the thoracic lumbar and sacral region on both sides of the spine in the paravertebral musculature, but there was no ecchymosis, no edema, no palpable deformity. *Id.* The ER physician noted that plaintiff could stand and ambulate, and that he could toe-raise and deep knee bend. There was no deficit neurologically as he had deep tendon reflexes of +2/4. Straight leg raising to 90 degrees without sciatica. *Id.* Plaintiff was diagnosed with a lumbar strain on each visit and given medication. (Tr. 235-36, 238-39).

Plaintiff presented to the ER with a toothache in May 2006. (Tr. 232-33). He was also seen in the ER in May with left elbow pain after having fallen down some steps. (Tr. 229-30). An x-ray of the elbow was negative. (Tr. 231).

Plaintiff complained of low-back pain in the emergency room in June 2006; he was tender on examination, and given pain medication. (Tr. 328-29).

Plaintiff was evaluated by consultative psychologist, Dale Seifert, MS Ed., on July 06, 2006. (Tr. 298-303). Plaintiff reported trouble sleeping and chronic fatigue. (Tr. 302). Dr. Seifert diagnosed dysthymic disorder and reported deficits in auditory and visual memory. According to Dr. Seifert, plaintiff was mildly limited in his ability to relate to others, understand

8

and follow instructions, and maintain attention and concentration to perform simple repetitive tasks. He believed plaintiff was moderately limited in ability to tolerate work stress. (Tr. 303).

On July 19, 2006, plaintiff was evaluated by Jennifer Wischer Bailey, M.D., a consultative physician. (Tr. 304-12). An X-ray of the lumbar spine was read as normal. Examination revealed that plaintiff had slight difficulty forward bending at the waist to 75° but straight leg raise was normal to 90° bilaterally. His neurological examination was normal with no evidence of muscle weakness or atrophy. Sensory modalities were well preserved and all deep tendon reflexes were brisk. Dr. Bailey reported her findings overall as "unremarkable." (Tr. 306). Dr. Bailey diagnosed plaintiff with chronic back pain, suspected lumbar strain, chronic left knee pain with a normal examination and tobacco abuse with a normal respiratory examination. *Id.* Dr. Bailey concluded, "Based on the findings of this examination, the patient appears incapable [2] of performing activities commensurate with his age, including a moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations nor are there environmental limitations." *Id.*

State agency reviewing physician, Douglas Pawlarczyk, Ph.D., reviewed the file on August 3, 2006. (Tr. 356-74). He reported that plaintiff's ability to understand and remember detailed instructions was markedly limited and his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances was moderately limited.

---

[2] As noted by the ALJ, Dr. Bailey's use of the word "incapable" appears to by a typographical error as her findings and other statements clearly indicate that she intended to use the word "capable." (Tr. 16). Plaintiff has not indicated any dispute with this interpretation by the ALJ.

(Tr. 370). Dr. Pawlarczyk also reported that plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited, and his ability to respond appropriately to changes in the work setting was also moderately limited. (Tr. 371). Dr. Pawlarczyk concluded that plaintiff could perform simple repetitive tasks in an environment with no strict production quotas. (Tr. 372).

Plaintiff was seen in the ER on August 23, 2006, complaining of abdominal pain and blood in his stool. (Tr. 324-26). Testing was negative, and he was "instructed on the importance of follow up with Dr. Bhaskar" after he reported that he had never been told to follow up with Dr. Bhaskar. (Tr. 325). Plaintiff returned to the ER the next day, with increased pain, but reported that he had not filled his Vicodin prescription from the day before. (Tr. 322-23). The attending physician contacted Dr. Bhaskar, who reported that plaintiff might be a pain medication seeker and advised against giving him any more prescriptions for pain medication. *Id.*

Plaintiff complained of abdominal pain on September 2, 2006, and reported going to the bathroom once or twice a day. (Tr. 318-20). A CT scan and other testing was negative, and plaintiff was given pain and anti-cramping medication and discharged with instructions to follow up with Dr. Bhaskar. *Id.* A sigmoidoscopy performed by Dr. Bhaskar on September 21, 2006, was negative, but he found a hemorrhoid that he suspected might be responsible for plaintiff's complaints of rectal bleeding. (Tr. 316-17). Dr. Bhaskar recommended that plaintiff see a family practice physician for his complaints of pain instead of further gastrointestinal treatment since his work up in the past has been negative. *Id.*

10

Plaintiff was seen in the ER on October 1, 2006, for abdominal pain. (Tr. 314-15). X-rays and a CT scan were normal. *Id.* Plaintiff was given medication and released. *Id.* On October 20, 2006, plaintiff was admitted to the hospital with an initial impression of gastrointestinal bleeding. Diagnostic imaging did not show any acute abnormalities and other testing was negative. (Tr. 342-53). He was discharged with a final diagnosis of acute abdominal pain, irritable bowel syndrome, and hypokalemia. (Tr. 346).

Plaintiff returned to the ER the next day with generalized abdominal pain, though he denied diarrhea. (Tr. 337-38). He was diagnosed with acute abdominal pain. *Id.* He was given pain medication and discharged with pain medication with a referral to a gastroenterologist. *Id.*

On December 5, 2006, Dr. Sklena, plaintiff's purported family physician, reported that plaintiff could only sit 2 hours total in an 8 hour day and ¼ hours without interruption. In addition, plaintiff could only stand and walk 2 hours total in an 8 hour day and ¼ hours without interruption. (Tr. 497-98). Dr. Sklena also reported that plaintiff had markedly limited ability to push/pull, bend, reach, and perform repetitive foot movements, and moderately limited ability to perform handling. *Id.* He listed plaintiff's medical conditions as: IBS since 2004, left knee pain and depression with abdominal pain. *Id.* Dr. Sklena concluded that plaintiff is unemployable for 12 months or more. *Id.*

In December 2006, plaintiff was seen twice in the ER with complaints of headaches. (Tr. 439, 440-441). He was given pain medication and discharged with a prescription for pain medication. *Id.*

Plaintiff was treated in the ER on January 1, 2007, for left knee pain with burning along the medial aspect of his right knee down medial to the left patella. (Tr. 437-38). X-rays revealed

11

some abnormality along the medial aspect of the patella with some bony loss. *Id.* Plaintiff was given crutches and a prescription for pain medication. *Id.* Plaintiff presented to the ER on January 7, 2007, with abdominal pain and blood in his stool. He was given pain medication and discharged with a prescription for pain medication. (Tr. 434-35). Plaintiff was seen in the ER on January 11, 2007, with complaints of abdominal pain and bloody bowel movements. (Tr. 422-23). He was given pain medication and discharged. *Id.* On January 13, 2007, plaintiff reported bloody stool and abdominal pain. (Tr. 414-15). A CT scan was negative; he was given IBS medication and released. *Id.* Plaintiff went to the ER with abdominal pain again on January 23, 2007. (Tr. 561-62). He reported that he had been off his IBS medication for the last six months. *Id.*

In March of 2007, plaintiff was evaluated at Scioto Paint Valley during a brief incarceration for failure to pay child support. (Tr. 376-78). He reported a history of depression for which he had been taking Zoloft. *Id.* During his incarceration, he reported suicidal ideation for which he was placed on suicide watch. (Tr. 378).

On April 26, 2007, plaintiff presented to the ER complaining of back pain. (Tr. 558-60). X-rays were negative and plaintiff was discharged after being treated with pain medication and given a prescription for pain killers. *Id.* He presented to the ER with an earache in June 2007. (Tr. 407). Plaintiff reported right ankle pain in July 2007, but an x-ray was normal and he was diagnosed with tendonitis and given pain medication, an air cast and crutches. (Tr. 553-55). In September 2007, plaintiff complained of low-back pain radiating into his feet. (Tr. 548-51). His clinical examination was normal, and he was given pain medication and released. *Id.*

Plaintiff complained of abdominal cramping with nausea and vomiting in October 2007. (Tr. 402-03). He was given prescriptions for anti-nausea and gastrointestinal medication. *Id.* Plaintiff was seen in the ER in November and December 2007 for a cut to his left foot. (Tr. 399-400). On November 17, 2007, plaintiff complained of abdominal pain and bloody stool, and reported that "he is trying to become disabled because he says he cannot work." (Tr. 539). He was admitted and underwent a colonoscopy as well as an upper gastrointestinal endoscopy, which were normal except for multiple small duodenal ulcers, according to Dr. Bhaskar. (Tr. 543-44). A CT scan of the abdomen did not reveal anything to explain plaintiff's gastrointestinal bleeding. (Tr. 546). Plaintiff was seen in the ER on November 20, 2007, with a complaint of urinary frequency. (Tr. 534-38). Plaintiff complained of abdominal pain with no diarrhea in early December and was treated with medication and released. (Tr. 526-32). On December 18, 2007, plaintiff complained of abdominal pain with no diarrhea. He was advised to double up on his Prilosec and follow up with Dr. Bhaskar. (Tr. 396-98). On December 26, 2007, plaintiff complained of abdominal pain with no diarrhea. (Tr. 391-92). He was treated with medication and given prescriptions. *Id.*

Plaintiff was seen in the ER on January 17, 2008, with pain in his left knee after tripping. (Tr. 520-25). He was diagnosed with a mild-to-moderate sprain/strain, given medication and discharged. *Id.* An x-ray of plaintiff's left knee taken on January 24, 2008, was normal. (Tr. 389). Plaintiff complained of abdominal pain on January 26, 2008. (Tr. 383-84). He was treated and released with prescriptions for medication. *Id.* The next day, plaintiff alleged abdominal pain at a different hospital; he was given medication and released. (Tr. 511-18).

13

Plaintiff complained of back pain radiating into his legs in February 2008. His physical examination was normal except for his complaints of pain. (Tr. 507-09). He was given medication and discharged. *Id.*

On March 09, 2008, plaintiff presented to the ER after injuring his lower back. (Tr. 381). Examination revealed mild tenderness present in the lumbar region. *Id.* He was diagnosed with an acute lumbar strain. *Id.* Plaintiff reported abdominal pain on March 22, 2008. (Tr. 500-06). He was diagnosed with abdominal pain and given medication. *Id.*

On June 23, 2008, plaintiff presented to the ER for an overdose of Tylenol in an attempt to kill himself. (Tr. 468-86). He was discharged with a diagnosis of Tylenol overdose, suicidal attempt, and depressive episode and advised to follow up with Brown County Counseling to establish psychiatric follow-up. *Id.*

Plaintiff self-referred himself to Talbert House/Centerpoint Health on June 4, 2008, for an assessment due to depression. (Tr. 573-83). He presented with a multitude of medical, mental health and substance abuse issues. *Id.* He reported he suffered from 4 stomach ulcers, irritable bowel syndrome (from which he had been hospitalized 6 times within the last 2 years, Dyslexia, was in a bad car accident which resulted in permanent damage to his spine, and "very bad" internal and external hemorrhoids. *Id.* Plaintiff also reported that he never finished high school (past 10th grade) and has had several unsuccessful relationships resulting in several children. *Id.* It was reported that plaintiff was evasive and minimized his substance abuse issues but upon further discussion he revealed extensive issues related to alcohol abuse and Opioid abuse. *Id.* Plaintiff also engages in self-harming behavior when intoxicated. (Tr. 573). He was diagnosed with Major Depressive Disorder, recurrent episode, unspecified, opioid dependence

14

(unspecified), alcohol dependence-early partial remission, and borderline personality disorder and given a Global Assessment of Functioning (GAF) of 55. (Tr. 569, 584).

## HEARING TESTIMONY

Plaintiff testified at the administrative hearing that he was no longer able to work due to depression and chronic pain. (Tr. 27). He testified that he suffers from depression, chronic back pain and spasms, irritable bowel syndrome, ulcers and knee pain. (Tr. 29-30). He testified that he was currently taking antidepressants and several medications for his stomach and nausea. (Tr. 31-32). He further noted that he takes Vicodin "every once in a while" for his back pain. He stated that his antidepressant medication gave him an upset stomach and caused trouble sleeping. *Id.*

Plaintiff testified that his biggest problem was his "mental issue." (Tr. 39). He reported problems with depression since he was 16. (Tr. 35). He testified that he had a suicide attempt in 2005. (Tr. 34). He also reported suicidal thoughts three to four times a week. (Hearing Tr. 26). Plaintiff testified that when he worked he was absent about three days out of a week. *Id.* He reported work was stressful because it was hard to concentrate and deal with people. *Id.* He also had problems with job deadlines and quotas. *Id.*

He also testified that his pain prevented him from working. (Tr. 39). He said he had daily pain in his stomach and back. (Tr. 41). On a scale of 1-10, he rated his stomach pain as a 5 and his back pain as an 8. (Tr. 41-42). Plaintiff testified that he had diarrhea all the time and sometimes went to the restroom about five times a day, spending about thirty minutes in the restroom. (Tr. 42). He said his feet sometimes tingled, and that he fell about three times a month due to his knee giving out. (Tr. 42, Hearing Tr. 25).

15

As to his daily activities, plaintiff testified that he has decreased interest in pleasurable activities, decreased appetite, decreased sleep, decreased energy, low self esteem, trouble concentrating, loss of memory, and crying spells about four times a week. (Tr. 35-37). He reported that he does not grocery shop, cook, do dishes, laundry, or housework. (Tr. 38-39). He further reported that he cannot read written instructions or his mail, both of which a friend does for him. (Tr. 40).

Plaintiff estimated that he could sit for two hours total in a workday and for fifteen minutes at a time; stand for about fifteen minutes; walk for about twenty feet; and lift five pounds. (Hearing Tr. 26-27). He was most comfortable lying down and could neither bend, crawl, nor use foot pedals without difficulty. *Id.* at 27. He believed he could not work a 40 hour work week because he gets too stressed and depressed, cannot concentrate, has trouble reading and understanding things, has a lot of pain, and is always going to the bathroom. *Id.*

Plaintiff's friend, Christin Rogers, also testified at the hearing. *Id.* at 30-35. She reported living with plaintiff for five months and seeing him daily for nine months. *Id.* at 31. She testified to going to the ER with him a few times, doing the driving, and helping him read his mail. *Id.* at 33, 35. She reported that plaintiff is depressed and in pain most of the time, doesn't really do much, and goes to the bathroom anywhere between 6-8 times or more within 2 hours. *Id.* at 33. She also reported observing plaintiff having problems with concentration, forgetfulness, and short-term memory. *Id.* at. 34. She estimated that plaintiff can stay focused about an hour or so before he loses his concentration. *Id.* She also reported that plaintiff does not have much interest in things anymore. He sits around, stares and zones out. *Id.* at 35. She

16

testified that she does not think plaintiff could work a 40 hour work week because of the pain he

is in all the time, all the trips to the hospital, and his depression and problems focusing. *Id.*

**OPINION**

Plaintiff assigns two errors in this case: (1) the ALJ erred in finding that plaintiff's

chronic abdominal pain is not a severe impairment; and (2) the ALJ erred in his RFC

determination by finding that plaintiff could sustain employment on a regular and continuing

basis. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial

evidence and should be affirmed.

**I. The ALJ's finding that plaintiff's abdominal pain is not a severe impairment is
supported by substantial evidence.**

A severe impairment or combination of impairments is one which significantly limits the

physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the

physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit,

lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic

work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the

ability to perform physical functions, the capacity for seeing and hearing, and the ability to use

judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §

404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential

evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff

must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of

H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if

it is a "slight abnormality which has such minimal effect on the individual that it would not be

17

expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Plaintiff contends the ALJ's finding of non-severe chronic abdominal pain is without substantial support in the record. In support of his argument, plaintiff cites to medical records showing multiple emergency room visits for chronic abdominal pain, whereupon he was treated with prescription medication used to relieve pain and/or treat irritable bowel syndrome.

Plaintiff appears to argue that the he cannot sustain employment because he has been diagnosed with abdominal pain and IBS, and given pain medication. Contrary to plaintiff assertion, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). As explained below, the ALJ reasonably determined that plaintiff's multiple emergency room visits for abdominal pain are not persuasive of a severe impairment "given the fact that he was frequently out of medications or on none at those times, coupled with the minimal objective findings, his failure to follow up with the gastroenterologist as directed, and the suspicion of drug-seeking behavior." (Tr. 14). The ALJ noted that plaintiff was frequently given narcotic pain medication, despite normal findings, and that plaintiff's treating gastroenterologist expressed concern that plaintiff was a drug-seeker. (Tr. 14).

18

The ALJ's non-severity finding is supported by substantial evidence.  As detailed above, despite plaintiff's numerous emergency room visits, the clinical findings were unremarkable.  *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment).  Likewise, diagnostic tests consistently revealed normal findings.  Notably, CT scans of plaintiff's abdomen showed no evidence of diverticulitis, appendicitis or other acute abnormalities. (Tr. 314-15, 319, 415, 546).  Plaintiff's colonoscopy yielded normal results, while an upper gastrointestinal endoscopy revealed "multiple small duodenal ulcers in the bulb area." (Tr. 543-44).  X-rays of plaintiff's abdomen did not reveal any acute abnormalities.  (Tr. 270, 315, 325).

The ALJ found that plaintiff frequently reported he had not been taking his medication and had not sought follow-up care.  This finding is substantially supported by the evidence of record.  After being seen in the emergency room, plaintiff was generally advised to follow-up with Dr. Bhaskar.  However, the record reveals that plaintiff often returned to the emergency department without first consulting with Dr. Bhaskar. (Tr. 383, 414-417).  In September 2006, Dr. Bhaskar also felt that plaintiff should see a family practice physician for his complaints of pain instead of further gastrointestinal treatment. (Tr. 317).  Plaintiff nonetheless reported to the ER again in October and November 2006 with complaints of abdominal pain and the record does not indicate that  plaintiff sought treatment from a family physician.  In January 2007, plaintiff was again seen in the emergency for abdominal pain.  At that time, he reported that he had been not been taking his IBS medication for six months.  (Tr. 562).  Plaintiff's claim of a severe

19

abdominal impairment is seriously undermined by his failure to take the medication prescribed for the condition that is allegedly the source of such pain. *See Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 927 (6th Cir. 1987).

Finally, as the ALJ noted, plaintiff's numerous ER visits suggest that plaintiff was seeking narcotic medication rather than treatment for abdominal pain.  In late August 2006, plaintiff presented to the ER alleging abdominal pain and blood in his stool. (Tr. 325).  The next day, plaintiff went back the emergency room with increased pain and  reported that he had not filled his Vicodin prescription from the day before. (Tr. 322-23).  The attending physician discussed plaintiff's case with Dr. Bhaskar who felt that plaintiff might be a pain-medication-seeker and advised against giving him any more prescriptions for pain in the emergency room. (Tr. 322).  In January 2008, plaintiff was seen in the emergency room complaining of abdominal pain.  He was treated with Demerol and Zofran, and discharged with a prescription for a pain medication. (Tr. 383-84).  The next day, plaintiff alleged abdominal pain at a different hospital, and despite normal findings, was given additional pain medication and was released. (Tr. 511-17).  The record also contains numerous ER visits, unrelated to plaintiff' abdominal pain, wherein he complained of pain and received medication.  Plaintiff presented to the ER complaining of headaches, toothaches, and back and knee pain, and despite normal and/or unremarkable findings, plaintiff was treated with pain medication and given a prescription for pain medication upon discharge.  Talbert House records from June 2008 also "revealed extensive issues related to alcohol and opioid abuse." (Tr. 573-83).

In view of the ALJ's findings discussed above, plaintiff's numerous emergency room visits are not indicative of a serious abdominal impairment.  Accordingly, the ALJ's finding that

plaintiff's abdominal pain does not constitute a severe impairment is substantially supported by the record.

Assuming, arguendo, the ALJ erred by not finding plaintiff's abdominal pain to be a severe impairment, that error would be harmless. Under the Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps of the sequential evaluation process. 20 C.F.R. § 404.1545(e). If an ALJ considers all of a claimant's impairments (both severe and non-severe) in determining the claimant's RFC, the ALJ's failure to characterize additional impairments as "severe" is not reversible error. *See Glenn v. Astrue,* Case No. 3:09-cv-296, 2010 WL 4053548, at *14 (S.D. Ohio Aug. 13, 2010) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). As this Court has previously determined:

> In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity.

*Meadows v. Commissioner of Soc. Sec.*, No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (Barrett, J.) (citing *Swartz v. Barnhart*, 188 Fed. Appx. 361, 368 (6th Cir. 2006); *Maziarz*, 837 F.2d at 244).

Here, the ALJ found plaintiff's depression and borderline intellectual functioning to be severe at step two of the sequential evaluation. Plaintiff's claim then proceeded to steps three through five of the sequential evaluation process, at which point the ALJ was required to consider both severe and non-severe impairments. *Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. 2008). As explained below in Section II, the ALJ properly considered and addressed all of

21

plaintiff's severe and non-severe impairments in determining his RFC. For these reasons, the Court determines that the ALJ's finding that plaintiff's abdominal pain is not a severe impairment is supported by substantial evidence and should be affirmed.

## II. The ALJ's RFC assessment is supported by substantial evidence.

A claimant's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Social Security Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence ( e.g., daily activities, observations)."

Plaintiff asserts that based upon the rate of his hospitalizations, he would miss more than one day of work per month and therefore would be unable to maintain full-time employment as outlined in SSR 96-8p.[3] Plaintiff further argues that his testimony shows he often goes to the restroom five to six times a day for twenty to thirty minutes at a time because of his IBS symptoms which would also preclude full-time employment. Plaintiff argues the ALJ erred by failing to include these limitations in his RFC.

The core of plaintiff's argument is that his abdominal pain and/or IBS require him to miss more than one day of work per month and/or prevent him from sustaining a forty-hour work

---

[3] In response to questioning from plaintiff's counsel, the VE testified that a person could be absent from work one day per month to sustain employment and any absences "over one day per month over time would preclude employment." (Hearing Tr. 39).

week.[4]  Contrary to plaintiff's assertions, however, the ALJ properly evaluated plaintiff's IBS

and complaints of abdominal pain.

Pain alone, if the result of a medical impairment, may be severe enough to constitute

disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S.

957 (1983).  In order to find plaintiff disabled on the basis of pain alone, the ALJ must first

determine whether there is objective medical evidence of an underlying medical condition.  If

there is, the Commissioner must then determine: (1) whether the objective medical evidence

confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical

impairment is severe enough that it can reasonably be expected to produce the allegedly disabling

pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986).  *See also Felisky v.*

*Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994);

While plaintiff argues that an emergency room physician reported plaintiff's abdominal

pain as a "chronic recurrent problem" (Tr. 266) the issue is not whether plaintiff experiences

chronic abdominal pain.  Rather, the relevant issue is whether the evidence of record shows

objective medical evidence confirming the severity of the pain plaintiff alleges or that plaintiff's

objectively established medical conditions can reasonably be expected to produce his allegedly

disabling pain. *Duncan,* 801 F.2d at 853.

Here, plaintiff fails to establish that he suffers from a medical condition that can

reasonably be expected to produce disabling pain. *Id.*  Plaintiff asserts that his complaints of

---

[4]  Notably, when plaintiff was examined by Dr. Bailey, he stated that his primary complaint was "back pain." (Tr. 304).  He revealed that he was taking Bentyl for IBS, but did not report any symptoms related to IBS or any abdominal pain. *Id.*  Additionally, plaintiff specifically denied any nausea, vomited and/or change in bowel habits. *Id.*

chronic abdominal pain, emergency room visits, and prescriptions for pain medication confirm the extent of his alleged limitations and pain. Yet, as explained above (*supra*, at 18-20), even though plaintiff was given prescription medications upon discharge from the emergency room on several occasions, there were no objective or clinical findings to support his subjective complaints of abdominal pain. Nor does plaintiff allege that his pain was not adequately managed by medication when so prescribed or that he suffered any adverse side effects from such medication. Thus, plaintiff's subjective allegations of pain are unsupported by the record and do not support his claim of disability in this case. *Duncan*, 801 F.2d at 852-53; 20 C.F.R. § 404.1529.

Furthermore, with respect to plaintiff's claim regarding his need for frequent restroom breaks, a review of the record shows that plaintiff did not make complaints to any physician similar to the allegations he offered at the hearing about his need for restroom breaks. Although plaintiff contends that the testimony regarding his frequent restroom breaks is supported the testimony of his live-in girlfriend, Christin Rogers, the ALJ properly rejected Ms. Rogers' testimony. (Tr. 16). The ALJ determined that the record did not corroborate Ms. Rogers' testimony and that she was not an impartial witnesses. *Id.* The assessment of the credibility of lay witnesses, as well as the weight to attribute their testimony, is peculiarly within the judgment of the ALJ. The testimony of a lay witness "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. SSA*, No. 96-3261, 108 F.3d 1376 (6th Cir. 1997)(unpublished), 1997 WL 103369, at *3 (citing *Lashley v. HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by

the reports of the treating physicians.")). *See also Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004).

As discussed above, plaintiff's alleged need to for frequent bathroom breaks is not supported by any medical evidence in the record. To the contrary, in September 2006, plaintiff noted that he was having one or two stools a day. (Tr. 319). Additionally, during his emergency room visits, plaintiff often denied diarrhea. (Tr. 322, 325, 391-92, 396, 434, 455, 526-32). Thus, the ALJ was within his prerogative in declining to give weight to Ms. Rogers' testimony. *See Melvin v. Secretary of Health and Human Services*, 762 F.2d 1009 (6th Cir. 1985) (unpublished), 1985 WL 13223, at *3 ("Although the lay witness testimony may be fully supported by the subjective conclusions of the treating physicians as to the plaintiff's credibility, such testimony is not fully supported by the medical reports. Under these circumstances, the Secretary did not err in refusing to address the lay witness testimony."). Accordingly, the ALJ did not err in declining to incorporate into plaintiff's RFC any limitations relating to plaintiff's need for restroom breaks or hospitalizations.

It is the ALJ's function to determine a plaintiff's RFC based on the record as a whole. 20 C.F.R. § 404.1546. Here, the ALJ reasonably determined that plaintiff's physical impairments did not impose any work-related restrictions or prevent him from sustaining employment as outlined in SSR 96-8p. The ALJ reasonably gave significant weight to the state agency physicians' findings in determining plaintiff's RFC. (Tr. 16). These findings are supported by both Dr. Bailey's consultative examination as well as the other objective and clinical findings of record. Dr. Bailey's examination was unremarkable with the exception of "slight difficulty forward bending at the waist." (Tr. 306). Otherwise, the rest of plaintiff's examination yielded

25

normal findings which led Dr. Bailey to conclude that plaintiff's physical impairments did not cause any work-related restrictions. (*Id.*).

The ALJ's RFC is further supported by additional objective and clinical findings in the record with respect to plaintiff's other alleged impairments. January 2007 x-rays of plaintiff's left knee (during an emergency room visit) showed no evidence of acute injury and/or effusion or swelling. (Tr. 437-38 ). Lumbar x-rays done in April 2007 showed no fracture, dislocation, subluxation or bony abnormalities and were read "as negative." (Tr. 599). Plaintiff presented to the emergency room with complaints of low back pain in September 2007. (Tr. 548-51). Yet, his examination was unremarkable and revealed no lower extremity weakness or sensory findings, normal muscle strength and tone, normal reflexes, no bony tenderness, adequate range of motion, and no significant deformity of the lower back. (Tr. 550). Additionally, March 2008 x-rays of plaintiff's lumbar spine did not reveal any acute changes. (Tr. 381).

Plaintiff, however, asserts that Dr. Sklena's findings clearly support his contention he is unable to sustain full-time employment. Dr. Sklena completed a basic medical form for the Brown County Department of Jobs and Family Services and opined that plaintiff suffers from IBS, back and knee pain, and depression. (Tr. 497). Dr. Sklena assessed physical limitations that would preclude gainful employment. However, as the ALJ noted in his decision, Dr. Sklena's assessment was not supported by any objective clinical findings. (Tr. 16). Moreover, other than the basic medical form, no additional treatment notes or clinical findings from Dr. Sklena appear in the record. Thus, based on the absence of objective medical support, the ALJ properly discounted Dr. Sklena's findings. *See Tilley v. Commissioner Of Social Security*, Case No. 09-6081, 2010 WL 3521928, *6 (6th Cir. Aug. 31, 2010).

26

The ALJ reasonably accommodated plaintiff's mental impairments by limiting plaintiff to simple, routine and repetitive tasks with no strict production quotas. (Tr. 15).[5]  Based on plaintiff's testimony, the ALJ also limited plaintiff to performing jobs that did not include more than simple reading, writing, and math skills, and restricted plaintiff to only occasional interaction with the general public, co-workers and supervisors. (Tr. 16).  As the objective medical evidence for the relevant time period indicates that plaintiff was capable of sustaining and performing a full range of work, with non-exertional limitations, the ALJ's residual functional capacity assessment is supported by substantial evidence and should be affirmed.

Based on the foregoing, plaintiff's assignments of error are without merit and should be overruled.

---

[5]  Plaintiff's Statement of Errors solely concerns the ALJ's treatment of the evidence of his alleged physical impairments.  Plaintiff's reply memorandum, however, asserts a new claim that the ALJ's RFC determination also failed to properly evaluate plaintiff's mental impairments.  This Court "will generally not hear issues raised for the first time in a reply brief." *Briggs v. Astrue,* 2010 WL 723727, at*10 (S.D. Ohio 2010) (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001)).  In any event, plaintiff's assertion lacks merit.  As noted above, the ALJ found plaintiff's depression and borderline intellectual functioning to be severe impairments and reasonably accommodated plaintiff's mental impairments in his RFC determination.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: 1/20/2011

Karen L. Litkovitz
United States Magistrate Judge

28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MICHAEL MCCLANAHAN,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-746
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

29